650 F.2d 783
 Janice Davis DIKE, Plaintiff-Appellant,
v.
The SCHOOL BOARD OF ORANGE COUNTY, FLORIDA, and Linton Deck,
Individually and as Superintendent of Schools of
Orange County, Florida, Defendants-Appellees.
 Nos. 80-5005, 80-5058.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 July 17, 1981.
 Bredhoff, Gottesman, Cohen & Weinberg, Michael H. Gottesman, Robert M. Weinberg, Gary K. Sasso, Joy L. Koletsky, NEA, Washington, D. C., Ronald G. Meyer, Fla. Teaching Profession NEA, Tallahassee, for Dike.
 Rowland & Bowen, Clyde David Brown, II, Andrew Thomas, Orlando, Fla., for defendants-appellees.
 Appeals from the United States District Court for the Middle District of Florida.
 Before GODBOLD, Chief Judge, FRANK M. JOHNSON, Jr. and ANDERSON, Circuit Judges:
 GODBOLD, Chief Judge:
 
 
 1
 Janice Dike, a teacher in the Orange County (Florida) School System, sued the school board and the superintendent of schools under 42 U.S.C. § 1983, challenging the board's refusal to permit her to breastfeed her child during her duty-free lunch period. Dike alleged that she could breastfeed the child in privacy without any disruption of school activities. She also alleged that breastfeeding was necessary to her child's health. She sought to characterize breastfeeding as a constitutional right with which the school board had unduly interfered. The district court dismissed the complaint and awarded attorneys' fees to the defendants because it deemed the action frivolous. We reverse the dismissal and the award of attorneys' fees.
 
 I. BACKGROUND
 
 2
 For the purpose of assessing the dismissal of the complaint for failure to state a claim, we regard the plaintiff's allegations as true. Radovich v. National Football League, 352 U.S. 445, 448, 77 S.Ct. 390, 392, 1 L.Ed.2d 456, 459 (1957); Reeves v. City of Jackson, Mississippi, 532 F.2d 491, 493 (5th Cir. 1976). Our discussion of the case is therefore based on her assertions.
 
 
 3
 Dike is employed by the school board as a kindergarten teacher at an elementary school. After giving birth to her child she returned to her teaching post. Having chosen to breastfeed her child, Dike wished to feed the child in this manner at all feedings, including the one feeding necessary during the school day. She sought a means of doing so that would not disrupt the education of children attending the school or interfere with her discharge of work responsibilities.
 
 
 4
 Dike therefore arranged for her husband or her babysitter to bring the child to school during her lunch period, when she was free from any duties. Dike would then nurse the child in privacy in a locked room into which other persons could not see. On occasions when the school asked Dike to perform duties during her lunch period she would hand the infant to her husband or babysitter. She was thus always available for work even during her duty-free hour. She alleges that this routine did not disrupt the educational process at the school or her work performance.
 
 
 5
 After three months of this routine without disruption or incident the school principal directed Dike to stop nursing her child on campus, citing a school board directive prohibiting teachers from bringing their children to work with them for any reason. The rule's stated rationale is to avoid possible disruptions by the children of teachers and to avoid the possibility of the children having an accident and subjecting the school board to litigation. The principal threatened disciplinary action should Dike continue to nurse the child at school.
 
 
 6
 Dike heeded these warnings and stopped nursing her child during the school day. But because the child developed an allergic reaction to formula milk, Dike had to artificially extract milk with a breast pump and leave it for the child's mid-day feeding. Dike asserts this new routine caused the child to develop observable psychological changes that also affected her own emotional well-being. She requested permission to resume her earlier procedure, alternatively requesting permission to nurse the child off campus during her non-duty time or to nurse the child in her camper van in the school parking lot. The school board denied these requests, apparently relying on another policy prohibiting teachers from leaving school premises during the school day.
 
 
 7
 A short time later the infant began refusing to nurse from a bottle. Dike thus had no choice but to breastfeed the child. Because the school board denied her permission to breastfeed on campus or off, Dike was compelled to take an unpaid leave of absence for the remainder of the school term.
 
 
 8
 Dike sued the board, alleging that it had unduly interfered with a constitutionally protected right to nurture her child by breastfeeding. The district court denied Dike's request for a preliminary injunction and subsequently dismissed her complaint. Because Dike began to wean her child while this appeal was pending her request for injunctive relief may be moot. The back pay claim remains.
 
 II. ANALYSIS
 
 9
 Our evaluation of plaintiff's claim proceeds in two steps. First, we consider whether her interest in nurturing her child by breastfeeding is entitled in some circumstances to constitutional protection against state infringement. We hold that it is. But a second inquiry, equally critical, concerns the justifications that the school board may have for restricting its employees' exercise of such a right during the work day. We recognize that the school board has legitimate interests in, for example, preventing disruption of the educational process and preventing interference with teachers' efficient performance of their duties.
 
 
 10
 We conclude that the complaint should not have been dismissed because Dike's interest in breastfeeding during her non-duty time and the school board's interests can only be properly evaluated after factfinding.
 
 1. Nature of the Plaintiff's Interest
 
 11
 The Constitution protects from undue state interference citizens' freedom of personal choice in some areas of marriage and family life. These protected interests have been described as rights of personal privacy or as "fundamental" personal liberties. See Carey v. Population Services International, 431 U.S. 678, 684, 97 S.Ct. 2010, 2015, 52 L.Ed.2d 675, 684 (1977); Roe v. Wade, 410 U.S. 113, 152-53, 93 S.Ct. 705, 726-27, 35 L.Ed.2d 147, 176-77 (1973); id. at 209-12, 93 S.Ct. at 756-57, 35 L.Ed.2d at 186-87 (Douglas, J., concurring); Griswold v. Connecticut, 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510, 514 (1965). While the opinions of the Court have linked these rights to various constitutional provisions,[1] their existence is now an established part of our constitutional jurisprudence.
 
 
 12
 Among these protected liberties are individual decisions respecting marriage,[2] procreation,[3] contraception,[4] abortion,[5] and family relationships.[6] The Supreme Court has long recognized that parents' interest in nurturing and rearing their children deserves special protection against state interference. See Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (deciding that a statute requiring children to attend public schools violated the Fourteenth Amendment's due process clause because it unreasonably interfered with the liberty of parents and guardians to direct the upbringing and education of children under their control); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (deciding that a statute forbidding the early teaching of foreign languages at any school unconstitutionally infringed the Fourteenth Amendment's guaranty of liberty because, among other reasons, it interfered with parents' control of their children's education; labeling the right to bring up children among "essential" liberties); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972) (deciding that a state could not deny unwed fathers custody of their children without a hearing on parental fitness, stating that a parent's interest in the companionship, care, custody, and management of his or her children warrants particular respect). Cf. Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed.2d 645, 652 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.").
 
 
 13
 Breastfeeding is the most elemental form of parental care. It is a communion between mother and child that, like marriage, is "intimate to the degree of being sacred," Griswold v. Connecticut, 381 U.S. at 486, 85 S.Ct. at 1682, 14 L.Ed.2d at 516. Nourishment is necessary to maintain the child's life, and the parent may choose to believe that breastfeeding will enhance the child's psychological as well as physical health. In light of the spectrum of interests that the Supreme Court has held specially protected we conclude that the Constitution protects from excessive state interference a woman's decision respecting breastfeeding her child.
 
 2. Justifications for the Regulations
 
 14
 Our conclusion that Dike's interest in breastfeeding is a protected liberty interest, however, is the beginning rather than the end of the constitutional inquiry. We reverse because a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief, Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80, 84 (1957); Cook & Nichol, Inc. v. Plimsoll Club, 451 F.2d 505, 506 (5th Cir. 1971), and because the district court's dismissal rests on the erroneous premise that no specially protected interest is involved. But this does not mean that the school board's restrictions on the exercise of this liberty in the employment context are necessarily constitutionally invalid. The Constitution does not prohibit all restrictions of protected liberties, and the school board may establish by appropriate pleading and proof that its regulations prohibiting teachers from leaving campus or bringing children to school, as applied to teachers who wish to breastfeed their children during non-duty time, further sufficiently important state interests and are closely tailored to effectuate only those interests. See Roe v. Wade, 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147, 178 (1973) (agreeing with lower courts' approach that the privacy right encompassing abortion decisions is not absolute and is subject to some limitation at some point where other interests become dominant, and noting that regulations limiting fundamental rights may be justified only by a compelling state interest and must be narrowly drawn to express only the legitimate state interests at stake); Poe v. Gerstein, 517 F.2d 787, 791-92 (5th Cir. 1975), aff'd mem., 428 U.S. 901, 96 S.Ct. 3202, 49 L.Ed.2d 1205 (1976). Cf. H. L. v. Matheson, -- U.S. --, --, n.32, 101 S.Ct. 1164, 1188 n.32, 67 L.Ed.2d 388, 419 n.32 (1981) (Marshall, J., dissenting) (compelling state interest test is commonly used in reviewing state burdens on fundamental rights); Zablocki v. Redhail, 434 U.S. 374, 388, 98 S.Ct. 673, 682, 54 L.Ed.2d 618, 631-32 (1978) (equal protection analysis stating that when a statutory classification significantly interferes with the exercise of a fundamental right it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests, citing cases requiring a compelling state interest and cases requiring "close scrutiny"). The school board's interests in avoiding disruption of the educational process, in ensuring that teachers perform their duties without distraction, and in avoiding potential liability for accidents are presumably legitimate. Whether these or other interests are strong enough to justify the school board's regulations, and whether the regulations are sufficiently narrowly drawn, must be determined at trial.
 
 III. ATTORNEYS' FEES
 
 15
 The district court awarded fees to the school board as the "prevailing party" under 42 U.S.C. § 1988 because it judged the complaint groundless and frivolous. The board concedes that reversal of the dismissal would require reversal of the award of attorneys' fees. Cf. EEOC v. First National Bank of Jackson, 614 F.2d 1004, 1008 (5th Cir. 1980) (reversing attorneys' fee award to defendant under 42 U.S.C. § 2000e-5(k) because district court should not have dismissed the suit), cert. denied, -- U.S. --, 101 S.Ct. 1361, 67 L.Ed.2d 342 (1981).
 
 
 16
 REVERSED.
 
 
 
 [1]
 See, e. g., Griswold v. Connecticut, 381 U.S. at 484-85, 85 S.Ct. at 1681-82, 14 L.Ed.2d at 514-15 (Douglas, J.) (right of privacy found in "penumbras" of specific guarantees of the Bill of Rights); id. at 486, 492, 85 S.Ct. at 1686, 14 L.Ed.2d at 516, 519 (Goldberg, J., joined by Warren, C. J., and Brennan, J.) (fundamental personal rights are protected by the concept of liberty in the Fourteenth Amendment's due process clause; Ninth Amendment shows framers' belief that fundamental rights exist that are not enumerated in the Bill of Rights); id. at 500, 85 S.Ct. at 1690, 14 L.Ed.2d at 524 (Harlan, J., concurring) (Fourteenth Amendment's due process clause protects, of its own force, certain basic values); Carey v. Population Services International, 431 U.S. at 684, 97 S.Ct. at 2015, 52 L.Ed.2d at 684 (due process clause protects liberty interests in zones of personal privacy); Roe v. Wade, 410 U.S. at 153, 93 S.Ct. at 726, 35 L.Ed.2d at 177 (right of privacy founded in Fourteenth Amendment's concept of personal liberty and restrictions upon state action); Zablocki v. Redhail, 434 U.S. 374, 383, 98 S.Ct. 673, 679, 54 L.Ed.2d 618, 628 (1978) (state statute preventing persons violating child support orders from remarrying requires critical examination under equal protection clause because it significantly interferes with the exercise of a fundamental right); id. at 395-96, 98 S.Ct. at 686, 54 L.Ed.2d at 636-37 (Stewart, J., concurring) (criticizing majority's analysis as the essence of substantive due process in the guise of equal protection); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (statute requiring sterilization of habitual criminals but exempting certain crimes violates equal protection principles because it infringes the "basic civil rights of man" and does not satisfy strict scrutiny); Cleveland Board of Education v. LaFleur, 414 U.S. 632, 640, 644, 648, 94 S.Ct. 791, 796, 798, 800, 39 L.Ed.2d 52, 60, 62-63, 64 (1974) (mandatory early pregnancy leave uses unconstitutional "irrebuttable presumption" that burdens protected liberty interests)
 
 
 [2]
 See Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967)
 
 
 [3]
 See Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)
 
 
 [4]
 See Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Carey v. Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977)
 
 
 [5]
 See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979)
 
 
 [6]
 See Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)