784 F.2d 713
 Diane SOUTHERLAND and Matthew Lee Ray, An Infant, by Diane
Southerland As Next Friend, Plaintiffs-Appellants,
v.
Morris THIGPEN, Individually and In His Official Capacity as
Director of the Mississippi Department of
Corrections, Defendant-Appellee.
 No. 85-4868.
 United States Court of Appeals,
Fifth Circuit.
 March 14, 1986.
 
 Shirley Payne, Cynthia Stewart, Jackson, Miss., for plaintiffs-appellants.
 Edwin Lloyd Pittman, Atty. Gen., Robert E. Gibbs, Asst. Atty. Gen., Jackson, Miss., Leonard C. Vincent, Staff Atty., Parchmen, Miss., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before WILLIAMS, GARWOOD, and JONES, Circuit Judges.
 GARWOOD, Circuit Judge:
 
 
 1
 Diane Southerland, a Mississippi prison inmate, and her infant son Matthew Lee Ray appeal the district court's denial of their requested temporary injunction to prevent the state's interference with their breast-feeding relationship. On February 3, 1986, we affirmed the district court's denial of plaintiffs' preliminary injunction motion. This opinion states the reasons for our decision.
 
 Facts and Proceedings Below
 
 2
 Diane Southerland pleaded guilty to the embezzlement of $388.21 and was sentenced to five years in prison by a Mississippi state court. Southerland was pregnant when sentenced and when received by the Mississippi Department of Corrections. While in custody, she was transferred from the Mississippi Penitentiary at Parchman to the University Medical Center in Jackson, where she gave birth to Matthew Lee Ray on November 18, 1985. She began breast-feeding Matthew in the hospital. Matthew weighed nine pounds, five ounces at birth.
 
 
 3
 On November 20, 1985, the state attempted to remove Southerland from the hospital. On that day, she filed a complaint with the United States District Court for the Southern District of Mississippi seeking a temporary restraining order and a preliminary injunction. The district court granted a temporary restraining order by agreement of the parties, permitting Southerland and her baby to remain together in the hospital until a hearing could be held on November 22, 1985.
 
 
 4
 At the hearing, which by agreement of the parties was for both the restraining order and the temporary injunction, Southerland presented evidence that breast-feeding would be medically beneficial for her son because it would reduce his risk of allergies and diabetes. Matthew has a family history of allergy problems. Moreover, because his father has diabetes mellitus and his mother has gestational diabetes--both inheritable forms of the disease--Matthew is subject to a greater risk of diabetes than children of nondiabetic parents. In addition, breast-feeding generally aids infants in developing immunities from gastrointestinal and respiratory infections. Plaintiffs also presented testimony concerning the psychological benefits a child derives from breast-feeding.
 
 
 5
 Southerland has three older children, two daughters aged twenty-one and fourteen and a son aged nineteen, whom she did not breast-feed. These children have a different father from Matthew. It appears that their father does not have diabetes, and none of the children has contracted the disease. However, the two daughters have developed some allergies. There is no indication that these allergies constitute serious health problems.
 
 
 6
 The district court denied both the requested temporary restraining order and the preliminary injunction. Plaintiffs moved for an injunction pending appeal, which the district court denied. Based on the state's representation that Southerland would receive a seventy-two-hour pass to make arrangements for her child, the district court also denied plaintiffs' motion for injunction or stay during their efforts to obtain from this Court an injunction pending appeal.
 
 
 7
 Plaintiffs filed a motion for injunction pending appeal with this Court on November 25, 1985. A motions panel of this Court granted a forty-eight-hour stay, but denied the motion for injunction pending appeal on November 27, 1985. Later the same day, Mississippi Governor Allain granted Southerland a temporary suspension of her sentence from November 27, 1985 until February 1, 1986. Because oral argument of this case was scheduled for February 3, 1986, we issued a stay of the judgment of the district court to commence on February 1. On February 3, 1986, following oral argument of the appeal herein, we terminated the stay and affirmed the district court's denial of plaintiffs' motion for preliminary injunction.
 
 Discussion
 
 8
 The decision to deny a preliminary injunction is within the district court's discretion. Mississippi Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir.1985). To obtain a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat that irreparable injury will result in the absence of the injunction; (3) that the threatened harm to the plaintiff outweighs the threatened harm to the defendant; and (4) that granting the injunction will not disserve the public interest. Id.; Canal Authority v. Callaway, 489 F.2d 567, 572 (5th Cir.1974). In this case, the district court concluded that plaintiffs failed to demonstrate any likelihood of success on the merits, that the potential harm to defendant outweighed that to plaintiffs, and that protection of defendant's interest best served the public interest. The court noted that Southerland had not "lost all of her protected liberty interests by reason of her incarceration," but decided that preventing the "disruption of the prison system" outweighed plaintiffs' interests.[1]
 
 The Mother's Interest
 
 9
 Southerland asserts a fundamental interest in her decision to breast-feed Matthew, which she claims is not outweighed by compelling interests of the state. The constitutionally protected right of privacy includes "the interest in independence in making certain kinds of decisions." Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). For example, in Carey v. Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), the Supreme Court stated that "among the decisions that an individual may make without unjustified government interference are personal decisions 'relating to ... family relationships ... and child rearing and education.' " Id. 97 S.Ct. at 2016 (quoting Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973) (citations omitted)). The Court has recognized that "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982) (citations omitted); accord Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 1935-39, 52 L.Ed.2d 531 (1977). This privacy right has been linked to various constitutional provisions. See Roe, 93 S.Ct. at 726; Doe v. Public Health Trust, 696 F.2d 901, 909 (11th Cir.1983); Dike v. School Board, 650 F.2d 783, 786 & n. 1 (5th Cir.1981). Of course, the "constitutional protection of familial privacy is not absolute." Brantley v. Surles, 718 F.2d 1354, 1359 (5th Cir.1983).
 
 
 10
 Southerland relies primarily on Dike, in which this Court concluded that "[i]n light of the spectrum of interests that the Supreme Court has held specially protected ... the Constitution protects from excessive state interference a woman's decision respecting breastfeeding her child." 650 F.2d at 787. The Dike Court found the decision to breast-feed encompassed in the parents' constitutionally protected interest in nurturing and rearing their children, because breast-feeding "is the most elemental form of parental care." Id. at 787. In Dike, a public school teacher challenged the constitutionality of the school's refusal to permit her to breast-feed her child during her duty-free lunch period. The school would not allow her to breast-feed her child on campus because teachers were prohibited from bringing their children to work. Nor would the school allow plaintiff to leave the campus during the school day. Having found that plaintiff had a protected liberty interest in breast-feeding, the court remanded for a determination of whether the school's regulations furthered sufficiently important state interests and were closely tailored to effectuate only those interests. Id.
 
 
 11
 Dike does not dictate a finding for Southerland, primarily because Southerland is a prison inmate. "We start with the familiar proposition that 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights....' " Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) (quoting Price v. Johnston, 344 U.S. 266, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948)). See also Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977). Although "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979) (citations omitted), their rights are subject to restrictions imposed by legitimate goals and policies of the penal system. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 3198-99, 82 L.Ed.2d 393 (1984); Bell, 99 S.Ct. at 1877; Pell, 94 S.Ct. at 2804. The Supreme Court has determined that these restrictions are justified by institutional needs of prison facilities--especially internal security--and by the systemic goals of deterrence, retribution, and correction. Hudson, 104 S.Ct. at 3198. Nevertheless, prisoners must be accorded "those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." Id. For example, a prisoner maintains many First Amendment protections, but does not have a Fourth Amendment expectation of privacy in his prison cell. Id. at 3198-3200.[2]
 
 
 12
 The considerations that underlie our penal system justify the separation of prisoners from their spouses and children and necessitate the curtailment of many parental rights that otherwise would be protected. In this case, allowing Southerland to breast-feed would impair legitimate goals of the penal system. The state's interest in deterrence and retribution would be undermined by allowing temporary suspensions for female prisoners who choose to breast-feed or by attempting to house nursing infants. Such accommodation also would interfere with the maintenance of internal security. Moreover, the Mississippi penitentiary system does not have the proper facilities or resources to take care of nursing infants. The added financial burden of infant care would further undercut important goals of the already heavily burdened prison system. Plaintiffs argue that the state should transfer Southerland to a minimum security center that generally houses property offenders, where she might be able to nurse Matthew. However, it appears that these centers are not equipped to handle infants, and that even this limited approach would create substantial problems for the Mississippi penal system. The accommodation of nursing prisoners who share Southerland's circumstances is not compatible with the objectives of the penal system.[3]
 
 
 13
 More broadly, it is evident to us that the existence of a right such as that here asserted on the part of a convict duly sentenced to confinement is "fundamentally inconsistent with imprisonment itself" and "incompatible with the objectives of incarceration." Hudson, 104 S.Ct. at 3198. "Loss of freedom of choice and privacy are inherent incidents of confinement" even for pretrial detainees. Bell, 99 S.Ct. at 1873. Imprisonment pursuant to conviction, against which eventuality our Constitution is careful to provide so many protections to the accused, necessarily entails a far greater loss of rights. "The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution," Jones, 97 S.Ct. at 2538, and "numerous associational rights are necessarily curtailed by the realities of confinement." Id. at 2541. As the Court observed in Pell, one of the premises of a sentence to confinement is that the convict shall be "isolated from the rest of society." 94 S.Ct. at 2804. Loss of associational rights is thus inherent in the execution of a sentence of incarceration.
 
 The Child's Interest
 
 14
 Plaintiffs also assert that the state may not justifiably interfere with Matthew's protected interest in maintaining the breast-feeding relationship with his mother. With respect to the personal relationship and association between parent and minor child, just as we may assume constitutional protection against improper governmental interference for the parent so may we also assume that the child's rights are not wholly lacking in such protection. But see, e.g., Restatement (Second) Torts Sec. 707A. The Supreme Court's statements recognizing that imprisonment pursuant to conviction brings about the withdrawal or limitation of many constitutional rights that would otherwise exist have generally been made in the context of cases dealing with the rights of the prisoners themselves. Yet as we have seen, the execution of a sentence of incarceration presupposes invasion and disruption of the personal relationships existing between the convict, who is to be thusly "isolated from the rest of society," and others. For example, a husband is not entitled to enjoin the state from bringing about the loss of society that is a consequence of the incarceration of his convicted spouse. Minor children lose many types of care and nurture from their parents who are imprisoned. Also, the virtual elimination of parental earning power during imprisonment will frequently result in the minor child's suffering a severe loss of material support. In none of these or analogous instances has it ever been suggested, so far as we are aware, that the state is constitutionally obliged to modify the convicted family member's sentence to confinement or its execution in order to accommodate the spouse's or minor child's associational or relational interests vis-a-vis the convict.
 
 
 15
 Matthew's special medical considerations do not result in a different balance when weighed against the competing interests of the state. The district court's finding that disruption of breast-feeding would not be life threatening to Matthew is not clearly erroneous. Indeed, there is no evidence to the contrary. At the district court hearing, plaintiffs presented extensive evidence concerning the desirability of breast-feeding generally and in this instance. However, they did not establish that the cessation of breast-feeding posed a really substantial and serious health risk to Matthew. While according to plaintiffs' expert's testimony Matthew "was a post-term baby and had a little bit of hyperglycemia at first," the latter condition had apparently been resolved by the time of the hearing and Matthew was considered a healthy child. He had not been diagnosed as having diabetes or allergies, although it would in any event be unusual to find allergies in one so young. The thrust of the expert's testimony was that, to a wholly unspecified extent, Matthew was somewhat more likely than the average person to have diabetes, due to his heredity, and that being fed human milk, as compared to formula, would, again to a wholly unspecified extent, likely somewhat reduce the chances of his subsequently incurring diabetes. There was no testimony that Matthew would more likely than not avoid diabetes if he were breast-fed and would more likely than not have diabetes if he were formula-fed, or that breast-feeding was his only meaningful chance to avoid diabetes. Nor was there testimony that other sources of human milk were not available. The expert in effect admitted that termination of breast-feeding would not be life threatening for Matthew, and indeed never suggested otherwise. We need not decide the more difficult question that would be presented if disruption of breast-feeding were truly life threatening or substantially dangerous to the infant of a prisoner. Matthew's interest in breast-feeding, though doubtless practically a good bit stronger than that of the usual breast-fed child, is not so uniquely compelling as to warrant our consideration of the possibility of departure from what we must regard as the established rule. The testimony showed that a material burden on the prison system would be imposed by permitting prisoners to breast-feed. We conclude that in this instance Matthew's special interest in breast-feeding is outweighed by compelling interests of the state.
 
 Conclusion
 
 16
 Plaintiffs have not demonstrated any likelihood of prevailing on the merits of their claim. Therefore, we affirm the district court's denial of the plaintiffs' motion for preliminary injunction.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 In ruling on applications to this Court for stay pending appeal, we have held that where the last three Canal Authority factors (irreparable injury, balance of harm as between the parties, and not disserving the public interest) weigh heavily in favor of granting a stay, the first Canal Authority factor, likelihood of success on the merits, may be considered as requiring not a probability of success on the merits, but merely "a substantial case on the merits." See, e.g., United States v. McKenzie, 697 F.2d 1225, 1226 (5th Cir.1983). Assuming, arguendo only, that this standard should be applied to our review of the district court's denial of the preliminary injunction, it does not affect the result here, as we conclude that plaintiffs have not presented a substantial case on the merits for this purpose. We likewise believe that the district court recognized as much, as it noted that "[w]hile the Canal Authority test has been interpreted to be flexible, it cannot be satisfied without some likelihood of success." In essence, the district court held that plaintiffs had demonstrated no substantial case on the merits. We agree. We also observe that no complaint has been made as to the standard employed by the district court
 
 
 [2]
 Prisoners retain limited rights to exercise their freedom of religion and freedom of speech. They also enjoy due process protection and Eighth Amendment protection from cruel and unusual punishment. Moreover, invidious racial discrimination is generally prohibited within a prison. Hudson, 104 S.Ct. at 3198
 
 
 [3]
 In contrast, the plaintiff in Dike was a public school kindergarten teacher who sought to have her child at the school for only one feeding a day. She arranged to nurse the child in a manner that was not disruptive to her work responsibilities by having her husband or babysitter bring the child to school during her duty-free lunch period. When the school needed help during her lunch period, she would leave the infant with her husband or babysitter and thus remained available even during her duty-free time. Dike, 650 F.2d at 785. Furthermore, this Court did not decide whether the school's restriction of this practice was justified, but remanded for that determination. Id. at 787