Brianna FROEHLICH and Kendra Froehlich, by their guardian ad litem Robert E. Sutton, Plaintiffs–Appellants,

v.

STATE OF WISCONSIN, DEPARTMENT OF CORRECTIONS, et al., Defendants–Appellees.

No. 99–1102.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 5, 1999.

Decided Nov. 10, 1999.

Robert E. Sutton (argued), Milwaukee, WI, for plaintiffs–appellants.

James E. Doyle, Anne Christenson Murphy (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for defendants–appellees.

Before POSNER, Chief Judge, and ESCHBACH and EVANS, Circuit Judges.

POSNER, Chief Judge.

Wisconsin's prisons are fearfully overcrowded and by way of solution the state has contracted with prisons in other states to house some of Wisconsin's prisoners at Wisconsin's expense. See, e.g., Mike Flaherty, "Best–Behaving Prisoners Are Exported, Guards Complain: They Handle Harder Cases, They Claim," *Wis. St. J.*, March 24, 1999, p. 1B. One of these is a federal prison in West Virginia and to it Wisconsin has transferred Carin Froehlich, who is serving a seven-year sentence for embezzlement. She has two young children, aged 3 and 5 respectively, who live with their father near the Wisconsin prison from which she's been transferred. Before us is an appeal in a suit brought on behalf of the children against the Wisconsin authorities, claiming that the transfer of their mother has "deprived them completely of any relationship or meaningful contact with their mother," a consequence that they claim makes the transfer a violation of their rights under the Eighth, Ninth, and Fourteenth Amendments. The mother is mysteriously not a plaintiff, though the complaint implies that she welcomes frequent visits by her children. The district court dismissed the complaint for failure to state a claim.

■ The Eighth Amendment claim is frivolous. The state is not punishing the children; the incidental infliction of hardship on a person not convicted of a crime is not punishment within the meaning of the amendment. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199 n. 6, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Ingraham v. Wright*, 430 U.S. 651, 664, 667–68, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Hutchinson v. Spink*, 126 F.3d 895, 901 (7th Cir.1997).

■ The Ninth Amendment is a rule of interpretation rather than a source of rights. *Quilici v. Village of Morton Grove*, 695 F.2d 261, 271 (7th Cir.1982); *Vega–Rodriguez v. Puerto Rico Telephone Co.*, 110 F.3d 174, 182 (1st Cir.1997); *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1125 (9th Cir.1996). Its purpose is to make clear that the enumeration of specific rights in the Bill of Rights is not intended (by the interpretive principle *expressio unius est exclusio alterius*) to deny the existence of unenumerated rights. *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir.1991).

■ That leaves the due process clause of the Fourteenth Amendment. The plaintiffs claim that while the right to visit a prisoner is not as such a species of "liberty" within the meaning of the clause, *Mayo v. Lane*, 867 F.2d 374, 375–76 (7th Cir. 1989); *Southerland v. Thigpen*, 784 F.2d 713 (5th Cir.1986); *White v. Keller*, 438 F.Supp. 110, 115–16 (D.Md.1977), aff'd, 588 F.2d 913 (4th Cir.1978) (per curiam), the right of children to associate with their parents is. There is merit to that claim. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Niehus v. Liberio*, 973 F.2d 526, 532–33 (7th Cir. 1992); *Mayo v. Lane, supra*, 867 F.2d at 375; *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir.1993). Were the State of Wisconsin to adopt Plato's suggestion in the *Republic* and abolish the family, it would be depriving millions of people of liberty and would have quite a hard time showing that it was doing so without denying them due process of law. But of course that is not what Wisconsin is doing. It is not

even, so far as appears, limiting the frequency of visits of the children to their mother. The separation of family members that ensues upon the lawful incarceration of one of them is not the destruction of the family, but merely an inevitable incident of incarceration; and no one yet has had the audacity to argue that imprisoning a person who has children or parents violates the Constitution—that only orphans and recluses can be imprisoned for committing crimes.

We must consider, however, whether imprisonment of a family member in an inconvenient location can be equated to the abolition of the family. Is there, in other words, a constitutional right to insist that one's parent or other close relative not be imprisoned at an inconvenient distance from oneself? We think not. Our reasons, besides disinclination to extend the disfavored doctrine of substantive due process, are practical. To recognize such a right would inject the federal courts deeply into the administration of the state and federal prison systems, forcing them to second-guess what are essentially managerial decisions for the world's largest, though not most luxurious, hotel chain. The plaintiffs, seeking to allay our concern about the breathtaking scope of the duty of prison supervision that they would impose on the federal judiciary, assure us that we can confine their claimed right of convenient access to minor children whose mother—but not father, even if the mother is dead—is transferred to a prison in a different state. But these are opportunistic limitations. No principled distinction can be drawn between the particular allegations of this case and any other case in which substantial hardship to family members consequent upon the placement of the imprisoned member at an inconvenient distance from the rest of the family is alleged. Since most prisoners have families, since prisoners' families generally have limited budgets and so cannot readily make frequent long journeys, and since prisons are not located with reference to the convenience of their inmates or the inmates'

relatives, it is apparent that the plaintiffs are asking us to embark on a constitutional adventure of indefinite scope and duration and one that is standardless as well.

They would have a stronger case if they could show that the defendants had shifted Carin Froehlich to West Virginia in an effort to break up her family, but no allegation of such improbable malice is made. Prison authorities seek generally to support family ties in the hope of making prisoners more peaceful and less likely to recidivate after they are released. This is a case at worst not of hostility to the family but of insensitivity, and we do not think that accommodation of family needs is a duty that the U.S. Constitution imposes on state prison officials, though it may be a moral duty. It may even be a legal duty under Wisconsin law; but so far as appears Carin Froehlich did not pursue any of the remedies that the Wisconsin prison system provides for inmates who do not want to be transferred. We do not have authority to enjoin state officials from violating state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Komyatti v. Bayh*, 96 F.3d 955, 959 (7th Cir.1996).

AFFIRMED.