**Steven J. GOODWIN, Petitioner,**

v.

**C.A. TURNER, Warden, United States Medical Center for Federal Prisoners, Springfield, Missouri, et al., Respondents.**

Civ. A. No. 87–3438–CV–S–WRC.

United States District Court,
W.D. Missouri, S.D.

Dec. 20, 1988.

Ronald L. Kuby and William M. Kunstler, New York City, for petitioner.

Robert G. Ulrich, U.S. Atty., Kansas City, Mo., for respondents.

## ORDER

COLLINSON, Senior District Judge.

STATE OF THE RECORD.

This case comes before the Court on respondents' Report to the Court and Partial Exceptions to the Magistrate's Report and Recommendation, and petitioner's Answer to Government's Exceptions. The Magistrate's Report and Recommendation was entered following a petition in habeas corpus arising out of the denial of the Bureau of Prison authorities of petitioner's request for assistance in having his wife artificially inseminated with his semen for childbearing purposes.

Petitioner's request is based on his desire to have a child as soon as possible because he is concerned that his wife's age at the time of his anticipated parole date might increase the couple's chances of having a child with birth defects.

The Bureau of Prisons denied petitioner's request because there was no policy governing artificial insemination. An appeal to the Regional Director was likewise denied.

Pursuant to petitioner's habeas corpus action, a Show Cause order was entered; respondents contended in their Response that the request was frivolous, and no violation of constitutional rights had been stated.

The Magistrate, granting relief in part, stated that a blanket denial of petitioner's request on the grounds of lack of policy did not meet even minimum due process requirements. The report recommended that petitioner have an opportunity to resubmit his request in a detailed fashion, after which respondents could answer. Prior to petitioner resubmitting his plan, respondents set forth their reasons for opposing petitioner's request, stating that "sound correctional policy dictates against allowing

inmates to artificially inseminate another person." Report to the Court and Partial Exceptions to the Magistrate's Report and Recommendation at 1.

Petitioner then incorporated his proposal in an answer to the above exceptions. Essentially, he requests the BOP's assistance in providing him with a clean container in which to deposit his semen, and a means to swiftly transport the container outside the prison where it can be delivered to his wife by an outside party. He has offered to bear any expense incurred by the Medical Center. That is the state of the record at this time.

■ As a case of first impression, this Court accords all due respect to the Magistrate's well-reasoned opinion, and concurs in full with his ruling to the extent that respondents' denial of petitioner's request based solely on the lack of any policy governing artificial insemination was constitutionally deficient in terms of providing even a minimum of due process.

■ Having reviewed the record with the utmost scrutiny, however, it is necessary to overrule the Magistrate on the issue of the nature of the interest asserted by petitioner. The Magistrate stated that petitioner's request was "grounded in his constitutional protected rights concerning private family and sexual matters." After extreme circumspection, this Court finds that regardless of the right petitioner has asserted, whether a right to privacy, a right to be free of cruel and unusual punishment, or a due process right, he does not have a fundamental constitutional right to father a child through artificial insemination that survives incarceration.

NO FUNDAMENTAL RIGHT

Petitioner alleges a fundamental constitutional right to decide whether and when to beget a child, a right that, like the right to marriage, survives incarceration, and is compatible with his status as a federal prisoner. *See Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). He also claims that his wife, a non-inmate, has the right to bear a child, which is being infringed upon by the prison's refusal to assist in the artificial insemination procedure.

The Court has approached this novel case fully cognizant of the legal parameters, but with a willingness to stretch those boundaries as necessary to satisfy any fundamental right that petitioner may have in regard to artificial insemination of his wife. There exists, however, an insurmountable obstacle—the fact of incarceration—that necessarily restricts any decision rendered herein.

As has been repeatedly stated in examining a prisoner's request based on an alleged fundamental right, "no 'iron curtain' separates prisoners from the Constitution." *Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1983). "[I]t is settled that a prison inmate 'retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Turner*, 482 U.S. at ——, 107 S.Ct. at 2265 *citing Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Among these are the right to be free from invidious racial discrimination, the right to petition the government for redress of grievances, reasonable opportunities to exercise religious freedom, etc. *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804.

There are numerous "rights," however, not fully enjoyed by prisoners. Incarceration "constitutionally deprive[s] the criminal defendant of his liberty to the extent that the State may confine him and subject him to the rules of its prison system." *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1975). "[T]hese restrictions or retractions also serve, incidentally, as reminders that, under our system of justice, deterrence and retribution are factors in addition to correction." *Hudson*, 468 U.S. at 524, 104 S.Ct. at 3199. "Deprivation of physical liberty is not the sole permissible consequence of a criminal conviction." *Johnson v. Rockefeller*, 365 F.Supp. 377, 380 (S.D.N.Y.), *aff'd* 415 U.S. 953, 94 S.Ct. 1479, 39 L.Ed.2d 569 (1973). Moreover, the Constitution does

## 1454

not mandate that prisoners be provided with every amenity they might find desirable. *Wolfish v. Levi,* 573 F.2d 118 (2d Cir.1978).

This decision against petitioner is governed by the Court's impression that the existence of a "right" such as here asserted is "fundamentally inconsistent with imprisonment itself." *Hudson,* 468 U.S. at 523, 104 S.Ct. at 3198. Curtailment of some interests is necessary, as a practical matter, to accommodate the myriad of "institutional needs and objectives" of prison facilities. *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974).

RIGHT TO PROCREATION DISTINGUISHED

Petitioner relies on *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 2d 1655 (1942), for the proposition that decisions relating to procreation may be made by individuals without unjustified government interference. Because *Skinner* involved a permanent deprivation of the means to procreate, rather than a mere delay as in petitioner's case, this Court finds *Skinner* non-dispositive.

The *Skinner* court, faced with a pervasive "invasion of personal liberty," *Id.* at 544, 62 S.Ct. at 1114–1115, aimed to safeguard the procreative potential from state infringement. The Bureau of Prisons has suggested nothing that would permanently deprive petitioner of the opportunity to exercise his option of fathering a child. Furthermore, the agency neither is nor should be responsible for guaranteeing a procreative opportunity. *See generally Poe v. Gerstein,* 517 F.2d 787, 796 (5th Cir.1975). There is simply no comparison between sterilization, carrying with it "subtle, far-reaching, and devastating effects," *Skinner,* 316 U.S. at 541, 62 S.Ct. at 1113, and denial of the facilitation of artificial insemination. The alleged right asserted by petitioner is too dissimilar to warrant finding a constitutional violation in reliance on *Skinner.*

RIGHT TO MARRIAGE DISTINGUISHED

Both parties rely on the Supreme Court's recent decision in *Turner,* recognizing a prison inmate's constitutionally protected right to marry. The Court struck down a challenged marriage regulation because "[m]any important attributes of marriage remain ... after taking into account the limitations imposed by prison life." 482 U.S. at ——, 107 S.Ct. at 2265. "Taken together, we conclude that these remaining elements are sufficient to form a constitutionally protected marital relationship in the prison context." *Id.*

However, "the right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration." *Id.* Respondents argue that among these substantial restrictions is the right to beget and bear a child while incarcerated, contending that *Turner* impliedly recognized this: "[m]ost inmate marriages are formed in the expectation that they *ultimately* will be fully consummated." *Id.* (Emphasis added). This Court agrees with respondents' contention. Regardless of the marital rights that do survive incarceration, many aspects of marriage that make it a basic civil right, such as cohabitation, sexual intercourse, and the bearing and rearing of children, are superseded by the fact of confinement. Artificial insemination, as a method of begetting a child, fall within this realm of unavailable "incidents of marriage."

RIGHT TO PRIVACY

Although the Supreme Court has yet to set forth the full range of interests protected under the rubric of the right to privacy, it would appear that an inmate's right to artificially inseminate his spouse does not come within any reasonable contours of the right, given the nature of the privacy interests deemed protected by the Court thus far. "It is clear that only personal rights that are considered 'fundamental' or 'implicit in the concept of ordered liberty,' are included in this guarantee of personal privacy." *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973) (citation omitted).

"[L]oss of freedom of choice and privacy are inherent incidents of confinement," even for pretrial detainees, *Bell v. Wolfish,*

441 U.S. 520, 537, 99 S.Ct. 1861, 1873, 60 L.Ed.2d 447 (1978), and "imprisonment pursuant to conviction ... necessarily entails a far greater loss of rights." *Southerland v. Thigpen*, 784 F.2d 713, 715 (5th Cir. 1986). In *Southerland*, the Fifth Circuit rejected a female inmate's assertion of the right to breastfeed her infant son while incarcerated. In holding that the accommodation of nursing prisoners was not compatible with the objectives of the penal system, the court stated that "[t]he considerations that underlie our penal system justify the separation of prisoners from their spouses and children and necessitate the curtailment of many parental rights that otherwise would be protected. *Id.* at 716. Similarly, any privacy interest petitioner might allege in becoming a parent through artificial insemination is necessarily infringed upon by the nature of incarceration, and must be circumscribed due to the reality of prison life.

No court has required an institution to provide for conjugal visits for inmates, and despite the security concerns that distinguish conjugal visit cases from the instant case, these decisions emphasize how a prisoner's intimate relationships are severely infringed upon by the nature of incarceration. Whatever privacy interests an inmate might have, nowhere does it appear that such interests impose an affirmative duty on the government, whether it be to provide facilities for conjugal visits or the means to assist in artificial insemination.

EIGHTH AMENDMENT RIGHT

Petitioner has alleged that to deny him his request would amount to cruel and unusual punishment, in violation of the Eighth Amendment. Certainly most, if not all, reasonable minds would agree that a prohibition against artificial insemination does not subject a federal prisoner to a "fate forbidden by the principle of civilized treatment guaranteed by the Eighth Amendment." *Trop v. Dulles*, 356 U.S. 86, 99, 78 S.Ct. 590, 597, 2 L.Ed.2d 630 (1958). When raised in the context of conjugal visit cases, courts have repeatedly held that the denial of the right of consortium does not violate the Eighth Amendment prohibition.

Refusal to facilitate artificial insemination is not, similar to the denial of conjugal visits, excessive punishment in itself or disproportionate to petitioner's crime.

It is true that petitioner's wife is being penalized by his incarceration. "But the Eighth Amendment prohibition does not read so far as to require the state to ensure against hardship caused to third persons as a result of the incarceration of one convicted of a crime." *Lyons v. Gilligan*, 382 F.Supp., 198, 201 (N.D.OH.1974). An individual's incarceration deprives him of the freedom "to be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484 (1972). Inevitably, an inmate's lawful incarceration deprives third parties of correlative rights. *See Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944).

Whatever interest petitioner has does not extend so far as to require the Bureau of Prisons to accommodate his desire to have his wife artificially inseminated. Because his claim does not rise to the level of a federal constitutional right so as to be cognizable as a basis for relief in federal court, his habeas corpus must be denied. It is therefore

ORDERED that respondents' execptions filed herein be, and they are hereby, sustained in part. It is further

ORDERED that petitioner be, and is hereby, denied leave to proceed in forma pauperis. It is further

ORDERED that the petition herein for a writ of habeas corpus be, and it is hereby, denied.