THE STATE OF OHIO, APPELLEE, v. TALTY, APPELLANT.

[Cite as *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888.]

(No. 2003–1344—Submitted May 11, 2004—Decided September 29, 2004.)

———————

MOYER, C.J.

{¶ 1} Appellant, Sean Talty, challenges the imposition of a condition of community control that ordered him to make "all reasonable efforts to avoid conceiving another child" during his five-year probationary period. Because we hold that the antiprocreation order is overbroad, see *State v. Jones* (1990), 49 Ohio St.3d 51, 52, 550 N.E.2d 469, we vacate that portion of the trial court's sentencing order.

I

{¶ 2} On February 27, 2002, the Medina County Grand Jury indicted Talty on two counts of nonsupport in violation of R.C. 2919.21(A)(2) or (B), a fifth-degree felony. After initially pleading not guilty, Talty changed his plea to no contest. The trial court accepted Talty' no-contest plea and found him guilty of both counts of nonsupport in violation of R.C. 2919.21(B).

{¶ 3} Prior to sentencing, the trial court ordered each party to brief "whether or not the Court can lawfully order that, as a condition of his supervision by the Adult Probation Department, the defendant may not impregnate a woman while under supervision." The American Civil Liberties Union of Ohio Foundation filed a motion for leave to file an amicus brief, which the trial court granted. The parties and the ACLU thereafter filed briefs on the constitutionality of an antiprocreation sanction.

{¶ 4} In a journal entry dated September 6, 2002, the trial court sentenced Talty to community control for five years under nonresidential sanctions in the form of the general supervision and control of the Adult Probation Department. As a condition of that community control, the trial court ordered Talty to "make all reasonable efforts to avoid conceiving another child."[1] The court additionally stated, "What those efforts are are up to [Talty], that is not for me to say; I am not mandating what he does, only that he has to make reasonable efforts to do so."

{¶ 5} Talty appealed the antiprocreation portion of the trial court's sentencing order to the Ninth District Court of Appeals, asserting that it violated his fundamental right to procreation under the Ohio and United States Constitutions. The court of appeals concluded that the reasonableness test enunciated in *State v. Jones*, 49 Ohio St.3d at 52–53, 550 N.E.2d 469—rather than a heightened level of scrutiny that traditionally applies in cases where a fundamental right is implicated—governed the validity of the community-control sanction.

{¶ 6} Having framed the issue as whether the antiprocreation condition satisfied the *Jones* test, the court of appeals held that the order was constitutional. In so holding, the court reasoned that the condition was reasonably related to the three objectives underlying the former probation statute: the rehabilitation of the defendant, the administration of justice, and the prevention of future criminality. Former R.C. 2951.02(C), 1983 Am.Sub.S.B. No. 210, 140 Ohio Laws, Part I, 604. Accordingly, the court of appeals held that the condition was constitutional and affirmed the judgment of the trial court.

---

1. The court further ordered Talty to make regular payments of child support, to pay $150 per week on arrearages, to obtain a GED within five years, and to make reasonable efforts to remain employed on a full-time basis.

{¶ 7} The cause is before this court upon our acceptance of a discretionary appeal. 100 Ohio St.3d 1469, 2003–Ohio–5772, 798 N.E.2d 405.

## II

{¶ 8} This appeal requires us to consider the validity of a community-control sanction that ordered a defendant to "make all reasonable efforts to avoid conceiving another child" during a five-year probationary period. It is undisputed that the right to procreate is considered fundamental under the United States Constitution, see *Skinner v. Oklahoma* (1942), 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655, and that the trial court's order in this case infringes that right. The issue on appeal is whether that infringement is permissible when imposed upon a probationer who has been convicted of nonsupport.

{¶ 9} Talty challenges the antiprocreation condition on both constitutional and nonconstitutional grounds. Both parties agree that the nonconstitutional aspect of Talty's challenge is governed by *State v. Jones*, 49 Ohio St.3d at 52–53, 550 N.E.2d 469. The parties disagree, however, whether his constitutional challenge should be governed by a strict-scrutiny analysis. It is well settled that this court will not reach constitutional issues unless absolutely necessary. *In re Miller* (1992), 63 Ohio St.3d 99, 110, 585 N.E.2d 396; *Hall China Co. v. Pub. Util. Comm.* (1977), 50 Ohio St.2d 206, 210, 4 O.O.3d 390, 364 N.E.2d 852. To determine the necessity of a constitutional analysis, therefore, we must first decide whether Talty's nonconstitutional arguments are dispositive. We thus turn to the principles that govern the nonconstitutional validity of a community-control sanction.

## A

{¶ 10} R.C. 2929.15(A)(1) governs the authority of the trial court to impose conditions of community control. That section provides that when sentencing an offender for a felony, the trial court may impose one or more community sanctions, including residential, nonresidential, and financial sanctions, and any other conditions that it considers "appropriate." The General Assembly has thus granted broad discretion to trial courts in imposing community-control sanctions. We review the trial court's imposition of community-control sanctions under an abuse-of-discretion standard. *Lakewood v. Hartman* (1999), 86 Ohio St.3d 275, 714 N.E.2d 902 (reviewing a probation condition under an abuse-of-discretion standard).

{¶ 11} Nevertheless, a trial court's discretion in imposing probationary conditions is not limitless. *Jones*, 49 Ohio St.3d at 52, 550 N.E.2d 469. In *Jones*, we set forth the standard by which courts determine whether a trial court exceeds those limits. The issue in *Jones* was whether a trial court may impose a probation condition that required an offender to "have no association or communi-

cation, direct or indirect, with anyone under the age of eighteen (18) years not a member of his immediate family." Id. at 52, 550 N.E.2d 469. We did not decide, however, whether the condition was *constitutionally* permissible. Instead, we concluded that the order "should reasonably be interpreted as meaning an illicit, or potentially unlawful association or communication." Id. at 55, 550 N.E.2d 469. Because the Constitution does not confer a right to speech or association for illegal purposes, see *Chicago v. Morales* (1999), 527 U.S. 41, 53, 119 S.Ct. 1849, 144 L.Ed.2d 67, our opinion in *Jones* thus addressed only a nonconstitutional challenge to the condition.

{¶ 12} Having so limited our analysis in *Jones,* we set forth the test for determining whether a condition reasonably relates to the three probationary goals—as reflected in former R.C. 2951.02(C)—of "doing justice, rehabilitating the offender, and insuring good behavior." 140 Ohio Laws, Part I, at 604. We stated that courts must "consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Jones,* 49 Ohio St.3d at 53, 550 N.E.2d 469.[2]

{¶ 13} In addition to considering whether a condition relates to these statutory goals, we observed that probation conditions "cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty." Id. at 52, 550 N.E.2d 469. This proposition, although having roots in Ohio case law, see *State v. Maynard* (1988), 47 Ohio App.3d 76, 77, 547 N.E.2d 409, has been recognized and applied in other jurisdictions. See, e.g., *Hughes v. State* (Fla.App.1996), 667 So.2d 910, 912 (asserting that the trial court may not impose conditions of probation that are "overbroad and can be violated unintentionally"); *Williams v. State* (Fla.App. 1995), 661 So.2d 59, 61 (stating that the trial court may not "impose conditions of probation which are overbroad"); *State v. Friberg* (Minn.1989), 435 N.W.2d 509, 515 (noting that probation not only must be reasonably related to the purposes of sentencing, but must not be "unduly restrictive of the probationer's liberty or autonomy").

{¶ 14} The requirement that a condition may not be overbroad is connected to the reasonableness of a condition. See *Turner v. Safley* (1987), 482 U.S. 78, 90–91, 107 S.Ct. 2254, 96 L.Ed.2d 64. The United States Supreme Court has explained—albeit in a constitutional context—that the availability of ready alternatives to a regulation is evidence that the regulation is unreasonable:

---

2. Applying the three-part test in *Jones,* we upheld the condition prohibiting illegal communication or association with anyone younger than 18.

{¶ 15} "[T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns. This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." (Citations omitted.) Id.

{¶ 16} Thus, *Jones* stands for the proposition that probation conditions must be reasonably related to the statutory ends of probation and must not be overbroad. Because community control is the functional equivalent of probation, this proposition applies with equal force to community-control sanctions. With the passage of Am.Sub.S.B. No. 2 in 1995, community control replaced probation as a possible sentence under Ohio's felony sentencing law. *Cleveland Bar Assn. v. Cleary* (2001), 93 Ohio St.3d 191, 192, 754 N.E.2d 235, fn. 1; compare R.C. 2929.15 with former R.C. 2951.02. The community-control statute, despite changing the manner in which probation was administered, did not change its underlying goals of rehabilitation, administering justice, and ensuring good behavior—notwithstanding the lack of explicit language in the community-control statute to that effect. Consequently, we see no meaningful distinction between community control and probation for purposes of reviewing the reasonableness of their conditions.

{¶ 17} With these principles in mind, we turn to the instant case.

B

{¶ 18} Talty asserts that his community-control order is overbroad because there was no opportunity to have the antiprocreation condition lifted if he became current on his child-support payments. The government counters that other states have applied a test similar to *Jones* and upheld "virtually identical" conditions. Specifically, the state points to *State v. Oakley* (2001), 245 Wis.2d 447, 629 N.W.2d 200, in which the Wisconsin Supreme Court upheld an antiprocreation condition imposed upon a father who had been convicted of intentionally refusing to pay child support.

{¶ 19} Significantly, however, the antiprocreation condition in *Oakley* included the stipulation that the court would terminate the condition if the defendant could prove to the court that he had supported his children. The Wisconsin Supreme Court considered this portion of the order critical, stating that "the condition is not overly broad because it does not eliminate Oakley's ability to exercise his constitutional right to procreate. He can satisfy the condition of probation by

making efforts to support his children as required by law." Id. at 473, 629 N.W.2d 200.

{¶ 20} Unlike the facts in *Oakley,* the trial court in the instant case did not allow for suspending the procreation ban if Talty fulfilled his child-support obligations. Indeed, the trial court cited Talty's rehabilitation and the avoidance of future violations as the reasons for imposing the condition. In view of these objects, however, the antiprocreation condition is, by any objective measure, overbroad; it restricts Talty's right to procreate without providing a mechanism by which the prohibition can be lifted if the relevant conduct should change.

{¶ 21} Although we do not determine whether a mechanism that allowed the antiprocreation condition to be lifted would have rendered the condition valid under *Jones,* such a mechanism would have been, at the very least, an easy alternative that would have better accommodated Talty's procreation rights at de minimis costs to the legitimate probationary interests of rehabilitation and avoiding future criminality. See *Turner,* 482 U.S. at 90, 107 S.Ct. 2254, 96 L.Ed.2d 64. Nor can the condition be considered valid merely because the trial court *could* modify the order if Talty became current on his child-support payments. Our review of a condition of community control is limited, as it must be, to what the sentencing order says and not what a trial court might later modify it to say.

{¶ 22} Further, we reject the argument that the antiprocreation order is valid because Talty could have been incarcerated but for the trial judge's "act of grace" and that, if incarcerated, he would have been denied conjugal visits. Although it is true that probationers, like incarcerated persons, do not enjoy the absolute liberty to which every citizen is entitled, the United States Supreme Court has rejected the "act of grace" doctrine. See *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656, fn. 4 ("a probationer can no longer be denied due process, in reliance on the dictum in [a prior case] that probation is an 'act of grace'"). Thus, the fact that the state might have incarcerated a defendant does not, in itself, justify a lesser intrusion of his or her rights. See *United States v. Tolla* (C.A.2, 1986), 781 F.2d 29, 33; *United States v. Pastore* (C.A.2, 1976), 537 F.2d 675, 681; see, also, *Griffin v. Wisconsin* (1987), 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 ("A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable'").

{¶ 23} Our rejection of the "act of grace" theory is predicated on the undisputed proposition that infringements of constitutional rights must be tailored to specific government interests, and these interests may differ depending on whether the defendant is incarcerated or whether the defendant is sentenced to community control. Thus, a prisoner who is convicted of a crime wholly

unrelated to procreation (say, burglary) may nonetheless be denied conjugal visits—arguably an infringement of the right to procreate—because, for example, the regulation is reasonably related to the legitimate government interest of maintaining the security of the prison. See, generally, *Hernandez v. Coughlin* (C.A.2, 1994), 18 F.3d 133, 137; *Goodwin v. Turner* (C.A.8, 1990), 908 F.2d 1395, 1398; *Goodwin v. Turner* (W.D.Mo.1988), 702 F.Supp. 1452, 1454. For the same crime (burglary), however, a probationer may not be denied the right to procreate on the basis of the same government interest—maintaining the security of a prison—because the probationer is not in prison. It follows, therefore, that a legitimate *penological* interest may be different from a legitimate *probationary* interest, thus rendering unsound the notion that the government may withhold from a probationer any right that it could withhold from a prisoner.

{¶ 24} Finally, a decision that upheld a condition on an "act of grace" theory would be incompatible with the three-part test that we adopted in *Jones*, 49 Ohio St.3d at 53, 550 N.E.2d 469. For if a trial judge could deny to a probationer any right that a prison official could deny to an inmate, then a condition of community control need not be related to the rehabilitation of the defendant, the administration of justice, or the prevention of future criminality. Id. at 53, 550 N.E.2d 469. Rather, the condition need only infringe the rights of a probationer as much as or less than a prison regulation may infringe those of an inmate. This proposition, if not implicitly rejected in *Jones*, was expressly rejected in *Gagnon*, 411 U.S. at 782, 93 S.Ct. 1756, 36 L.Ed.2d 656, fn. 4. Hence, in addition to the reality that the government has different interests in imposing community-control sanctions than it does in administering prisons—and thus probationers may retain certain liberties that inmates do not—we reject the "act of grace" doctrine as being contrary to our precedent.

## III

{¶ 25} For the foregoing reasons, we hold that the antiprocreation order is overbroad under *Jones*, 49 Ohio St.3d at 52, 550 N.E.2d 469, and vacate that portion of the trial court's sentencing order. Given our disposition, we need not address Talty's constitutional and remaining nonconstitutional challenges to the antiprocreation condition. Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court for resentencing.

Judgment reversed.

RESNICK, F.E. SWEENEY, O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

---

**PFEIFER, J., dissenting.**

{¶ 26} According to the trial court's journal entry dated September 6, 2002, defendant Sean Talty "is a 30–year–old male who has fathered six or seven children. (The evidence was unclear as to the exact number of children.) Two children were conceived during a marriage: Heather Talty and Shyann Talty. The Defendant owes child support arrears for those children in the amount of $28,044.79, as of June 21, 2002. He has one child, Courtney Hunter, for whom he owes child support in the amount of $10,642.51 as of June 21, 2002.

{¶ 27} "The Defendant also has two children by the woman with whom he is currently living and has two children by other women, one of whom lives in Butler County, and he possibly has a child living in Dayton, Ohio."

{¶ 28} In a prior child-support action in domestic relations court, a journal entry stated that Talty had refused to provide any support for his children for more than two years. The court found that Talty "never paid" toward his child-support obligations even though he was aware of them. Based in part on these facts, the court found Talty to be in contempt of his support obligations, threatened him with incarceration, and stated that Talty was "disrespectful and antagonizing." On January 9, 2001, Talty was again found in contempt for failure to fulfill his support obligations, this time under a different support order.

{¶ 29} In the criminal case now before us, the trial court found Talty guilty of two counts of felony nonsupport of dependents, in violation of R.C. 2929.21(B), and sentenced him, among other things, to "make all reasonable efforts to avoid conceiving another child." Talty asserts that that part of the sentencing violates his constitutional right to procreate. For the following reasons, I disagree, and I therefore dissent from the majority opinion.

{¶ 30} The majority ultimately concludes that the trial judge's community-control condition is overbroad, based on this court's decision in *State v. Jones* (1990), 49 Ohio St.3d 51, 550 N.E.2d 469. I am not persuaded that *Jones*, which addressed conditions of probation pursuant to former R.C. 2951.02, applies to this case, which addresses conditions of community control pursuant to R.C. 2929.15. For one thing, R.C. 2929.15 was enacted several years after *Jones* was decided. Although community control is in large measure the functional equivalent of probation, the drafting of the two statutes is markedly different. I prefer to address R.C. 2929.15, the community-control statute, which must have been enacted for a reason, as separate from probation.

{¶ 31} Pursuant to R.C. 2929.15(A)(1), a trial court may impose residential, nonresidential, and financial sanctions, and "may impose any other conditions of release under a community control sanction that the court considers appropriate." When imposing community-control sanctions for a felony, the trial court "shall be guided by the overriding purposes of felony sentencing," which are "to protect the public from future crime by the offender and others and to punish the

offender." R.C. 2929.11(A). To achieve those purposes, the sentencing court "shall consider the need for incapacitating the offender, deterring the offender and others from future crime, [and] rehabilitating the offender." R.C. 2929.11(A). Sanctions imposed by trial courts must be "reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). The General Assembly has thus charged trial courts with tempering the possibly draconian results of excessive focus on the overriding purposes of punishment and public protection by considering reasonableness, proportionality, and consistency. See Griffin & Katz, Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan (2002), 53 Case W.Res.L.Rev. 1.

{¶ 32} Talty was ordered to "make all reasonable efforts" to avoid fathering another child. I consider this sanction appropriate, or reasonable, and proportionate, under the egregious circumstances of this case because the sanction relates directly to the crime of which Talty was convicted and is tailored to prevent even more instances of felony nonsupport.[3] Given Talty's propensity to sire children, the antiprocreation condition must also be considered in the nature of punishment. These considerations are remarkably similar to the second and third parts of the *Jones* test, but as noted, I am applying the current statutory framework, not the *Jones* test. Part one of the *Jones* test is even mentioned in the current statutory framework, though as a mere consideration. In short, I believe that the sanction was imposed in compliance with the current statutory framework. See R.C. 2929.15 and 2929.11.

{¶ 33} Next, I turn to the merits as addressed by the majority opinion. The majority opinion held that "the antiprocreation order is overbroad." As the majority clearly states, overbreadth in this context is not constitutional overbreadth, which can be invoked only when the Free Speech Clause of the First Amendment to the United States Constitution is implicated. See *Indiana Voluntary Firemen's Assn., Inc. v. Pearson* (S.D.Ind.1988), 700 F.Supp. 421, 434 ("constitutional 'overbreadth' analysis is *only* applicable if the challenged statute 'includes within its scope activities which are protected by the First Amendment,' *Hill v. City of Houston*, 764 F.2d 1156, 1161 (5th Cir., 1985) (quoting J. Nowak, R. Rotunda & J. Young, *Handbook on Constitutional* Law 722 (1978)), *aff'd* 482

---

3. Whether the antiprocreation condition is consistent with "sentences imposed for similar crimes committed by similar offenders" is a more difficult question. I am not aware of circumstances in which a person, after fathering so many children, was convicted of nonsupport of so many, after so little effort to support them. I would not expect the antiprocreation condition to which Talty was sentenced to be applied willy-nilly, but only in the most egregious cases, like this one.

U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) [emphasis sic])". Rather, overbreadth in this context is more in the nature of a reasonableness argument. See R.C. 2929.11(B) (sentence must be reasonably calculated to achieve the two overriding purposes of felony sentencing).

{¶ 34} The majority states that the antiprocreation condition is overbroad because "it restricts Talty's right to procreate without providing a mechanism by which the prohibition can be lifted if the relevant conduct should change." To the contrary, R.C. 2929.15(C) provides that "[i]f an offender, for a significant period of time, fulfills the conditions of a sanction imposed pursuant to section 2929.16, 2929.17 or 2929.18 of the Revised Code in an exemplary manner, the court may reduce the period of time under the sanction or impose a less restrictive sanction." The community-control statute provides the very mechanism the majority criticizes the trial court for omitting. Further, the trial court ordered Talty to make only "reasonable efforts," stating, "What those efforts are are up to him, that is not for me to say; I am not mandating what he does, only that he has to make reasonable efforts to do so." The language of the antiprocreation condition is reasonable, not excessively rigid or absolute. I conclude that the antiprocreation condition is not overbroad.

{¶ 35} Next, I turn to constitutional considerations. As the majority states, "the right to procreate is considered fundamental under the United States Constitution." *Skinner v. Oklahoma* (1942), 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655. "To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only * * * conditional liberty properly dependent on observance of special [probation] restrictions.' " *Griffin v. Wisconsin* (1987), 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709, quoting *Morrissey v. Brewer* (1972), 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484. In Ohio, persons on parole enjoy only the " 'conditional liberty properly dependent on observance of special parole restrictions.' " See *State v. Benton* (1998), 82 Ohio St.3d 316, 318, 695 N.E.2d 757, quoting *Morrissey*, 408 U.S. at 480, 92 S.Ct. 2593, 33 L.Ed.2d 484. The same is true of community control. Like federal courts that have reviewed similar issues, I do not believe that felons subject to community control are entitled to strict scrutiny even for the deprivation of fundamental rights. See *United States v. Bolinger* (C.A.9, 1991), 940 F.2d 478, 480; *United States v. Peete* (C.A.6, 1990), 919 F.2d 1168, 1181; *United States v. Hughes* (C.A.6, 1992), 964 F.2d 536; *United States v. Lowe* (C.A.9, 1981), 654 F.2d 562, 567; *Higdon v. United States* (C.A.9, 1980), 627 F.2d 893. See, also, *State v. Oakley* (2001), 245 Wis.2d 447, 629 N.W.2d 200; and *Commonwealth v. Power* (1995), 420 Mass. 410, 650 N.E.2d 87. But see *People v. Pointer* (1984), 151 Cal.App.3d 1128, 199 Cal.Rptr. 357. I would apply a reasonableness test to community-control sanctions that interfere with fundamental rights, for the same

reasons that the Wisconsin Supreme Court gave for applying a reasonableness test to probation: "[I]f probation conditions were subject to strict scrutiny, it would necessarily follow that the more severe punitive sanction of incarceration, which deprives an individual of the right to be free from physical restraint and infringes upon various other fundamental rights, likewise would be subject to strict scrutiny analysis. [The position in favor of strict scrutiny] is either illogical in that it requires strict scrutiny for conditions of probation that infringe upon fundamental rights but not for the more restrictive alternative of incarceration, or it is unworkable in that it demands the State meet the heavy burden of strict scrutiny whenever it is confronted with someone who has violated the law." (Citation omitted.) *Oakley,* 245 Wis.2d at 464, 629 N.W.2d 200, fn. 23.

{¶ 36} Applying the words of the Wisconsin court to this case, I conclude that "in light of [Talty's] ongoing victimization of his * * * children and extraordinarily troubling record manifesting his disregard for the law, this [antiprocreation] condition—imposed on a convicted felon facing the far more restrictive and punitive sanction of prison—is not overly broad and is reasonably related to [Talty's] rehabilitation. Simply put, because [Talty] was convicted of [nonsupport of a dependent]—a felony in [Ohio]—and could have been imprisoned * * *, which would have eliminated his right to procreate altogether during [the term of his imprisonment], this [community control] condition, which infringes on his right to procreate during his term of [community control], is not invalid under these facts." Id. at 452, 629 N.W.2d 200.

{¶ 37} The majority opinion characterizes this reasoning, that "Talty could have been incarcerated but for the trial judge's 'act of grace,'" as rejected by the United States Supreme Court. See *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656, fn. 4. I disagree. In *Gagnon,* the Supreme Court stated with respect to the "act of grace" concept that a probationer could not be denied his conditional liberty without being afforded due process. Id. See *Morrissey,* 408 U.S. at 480–484, 92 S.Ct. 2593, 33 L.Ed.2d 484. In this case, Talty has had due process. He even had an extra opportunity to specifically address the antiprocreation condition. Talty is not being deprived of a constitutional right without due process; he is being deprived of a constitutional right because he is a convicted felon, because the crime for which he was convicted directly related to the constitutional right, because he exercised the constitutional right irresponsibly, and because the deprivation of the constitutional right will make it less likely for him to commit again the offense of which he was convicted.

{¶ 38} One last comment: the likely outcome of the majority opinion is that the trial judge will add a provision enabling the sanction to be lifted and then Talty will appeal the new sanction. In the interests of judicial economy, the majority should address the merits at this stage, as I have done. I dissent.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

Dean Holman, Medina County Prosecuting Attorney, and James R. Bennett II, Assistant Prosecuting Attorney, for appellee.

J. Dean Carro, for appellant.

B. Jessie Hill, urging reversal for amicus curiae, American Civil Liberties Union of Ohio Foundation.