[Cite as *State v. Rogers*, 2012-Ohio-4753.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

     Plaintiff-Appellee                      :        C.A. CASE NO. 24848

vs.                                              :        T.C. CASE NO. 11-CR-93

JAMES F. ROGERS                                  :        (Criminal Appeal from the
                                                            Common Pleas Court)

     Defendant-Appellant                     :

          . . . . . . . . .

**O P I N I O N**

Rendered on the 12th day of October, 2012.

          . . . . . . . . .

Mathias H. Heck, Jr., Prosecuting Attorney, by Michele D. Phipps, Assistant Prosecuting Attorney, Atty. Reg. No. 0069829, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

Victor A. Hodge, Atty. Reg. No. 0007298, 117 South Main Street, Suite 400, Dayton, Ohio 45422

     Attorney for Defendant-Appellant

          . . . . . . . . .

GRADY, P.J.:

{¶ 1}   Defendant James Rogers appeals from his conviction and sentence for two counts of having weapons under disability, R.C. 2923.13(A)(3), felonies of the third degree.

{¶ 2}   In December 2010, a Dayton Metropolitan Housing Authority ("DMHA") employee sent an e-mail to the Dayton Police concerning possible drug activity at Defendant's residence at a DMHA facility. The e-mail identified that location both by address and by Defendant's full name. Officer Barnes  obtained a photograph of Defendant and also learned that he had prior convictions for

drug possession and trafficking. Officer Barnes twice attempted a knock and advise at Defendant's home. After the second failed attempt, while Officers Barnes and Hamby were talking in front of Defendant's building, they saw a vehicle with darkly tinted windows approaching and decided to initiate a traffic stop.

{¶ 3} The officers activated their cruiser's lights and parked behind the other vehicle. As they approached, the passenger, who was later identified as Defendant, was exiting the vehicle. The officers asked Defendant to remain in the vehicle, and he did. They then explained the reason for the stop and asked the driver and Defendant for identification. After finding that there were no outstanding warrants for either occupant and that the driver and her vehicle were properly licensed, the officers issued a verbal warning for the window tint and told the driver she was free to leave. Officer Barnes asked Defendant if he would step out of the vehicle and speak with him, and Defendant agreed. The driver then drove off.

{¶ 4} The officers showed Defendant the e-mail complaint and advised him of the knock and advise policy. Defendant seemed surprised by the complaint. He signed the knock and advise form acknowledging his receipt and understanding of the warning. The officers asked Defendant for permission to search his apartment. Defendant agreed and signed a consent to search form.

{¶ 5} The officers asked Defendant if there were any guns in the apartment. He admitted that there was a shotgun in his living room closet and showed it to the officers. During the ensuing search, Officer Hamby also found a loaded handgun in Defendant's bedroom. The officers did not arrest Defendant at that time. But, knowing of Defendant's prior convictions, they seized the weapons as evidence and advised Defendant that if he received any papers from the court, he would need to respond.

{¶ 6} In March, 2011, Defendant was indicted on two counts of having weapons under disability. Defendant filed a motion to suppress evidence of the two guns officers had seized. A

hearing on the motion was held on June 22, 2011. At the conclusion of the hearing, the court took the matter under advisement. On July 7, 2011, the court overruled Defendant's motion to suppress and set the matter for pretrial conference.

{¶ 7} The charges against Defendant were tried to the bench. The parties stipulated to the evidence adduced at the suppression hearing. On September 15, 2011, the court found Defendant guilty of both weapons under disability charges. The court filed its judgment of conviction sentencing Defendant to community control sanctions on September 29, 2011. Defendant filed a timely notice of appeal.

{¶ 8} Defendant's first assignment of error:

"THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."

{¶ 9} When considering a motion to suppress, the trial court assumes the role of the trier of facts and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. *Id.*

{¶ 10} Defendant does not challenge the validity of the traffic stop. That stop was lawful because it was based on the driver's commission of a traffic offense as observed by the officers, i.e., her vehicle's darkly tinted windows. *Dayton v. Erickson,* 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996). Instead, Defendant argues that the officers illegally expanded the scope and duration of the original traffic stop when they asked Defendant to talk with them without first advising him that he could refuse. Defendant contends that because his continued detention was not consensual, his subsequent

consent to search his apartment was not voluntarily given. The State argues that when the officers requested Defendant's consent to search his apartment, their encounter had become consensual.

{¶ 11} A consensual encounter occurs when a police officer approaches an individual, identifies himself, and requests information, while the individual remains free to disregard the questions and walk away. *United States v. Mendenhall,* 446 U.S. 544, 555-556, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). A consensual encounter may become a seizure if several officers are present and/or if an officer displays his weapon, touches the individual, or uses language or a tone of voice indicating that compliance with the officer's request might be compelled. *Id.* at 556. Consensual encounters do not become seizures simply because the officer does not explicitly advise the individual that he is free to leave. *Id.*

{¶ 12} One well-established exception to the Fourth Amendment warrant requirement is the consensual search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "[T]he question whether a consent to search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *Id.* at 227.

{¶ 13} As a passenger in the vehicle that was stopped, Defendant has standing to challenge the legality of the stop. *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 168 L. Ed.2d 132 (2007). That right of challenge reasonably extends to inquiries made of a detainee that are unrelated to the purpose of the stop and that extend the duration of the detention the stop involves. *Arizona v. Johnson*, 555 U.S. 323, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009).

{¶ 14} The purposes of the traffic stop were complete when the driver was given a warning citation and then drove off. However, before she drove off, and after having first ordered Defendant to stay inside the vehicle, Officer Barnes asked Defendant to step out of the vehicle in order to answer some questions. Defendant complied and, following that, gave the consent to search his apartment the

officers requested. The officer's request to step out of the vehicle in which Defendant had been ordered to remain extended his detention. With respect to Defendant, as opposed to the driver, there was no termination or interruption of the detention that commenced when the vehicle was stopped.

{¶ 15} Because the purposes of the traffic stop had been completed, Defendant's continued detention was illegal. Under these unique circumstances, the officers could have told Defendant he was free to leave, but they did not. Perhaps they believed their explanation of the purpose of their knock-and-announce and the tip about drugs in his apartment would be sufficient to demonstrate a purpose different from the traffic stop. However, such a conclusion would be speculative.

{¶ 16} In *State v. Robinette*, 80 Ohio St.3d 234, 1997-Ohio-343, 685 N.E.2d 762, the Supreme Court held that, after the purposes of a traffic stop have been completed, an officer may not ask the driver for permission to search his vehicle. We believe that prohibition likewise applies to the officer's request to search Defendant's apartment. On that basis, the consent Defendant gave in response was invalid.

{¶ 17} Warrantless searches are *per se* unreasonable and therefore illegal, absent an exception to the Fourth Amendment warrant requirement. Consent creates such an exception, when it is freely and voluntarily given. Defendant's continued, illegal detention tainted his consent. Therefore, the search of his apartment and resulting seizure of the two guns that were inside was unreasonable for purposes of the Fourth Amendment. The trial court erred when it overruled Defendant's motion to suppress.

{¶ 18} Defendant's first assignment of error is sustained.

{¶ 19} Defendant's second assignment of error:

"THE TRIAL COURT ERRED BY IMPOSING AS A COMMUNITY CONTROL SANCTION AN ORDER THAT APPELLANT COMPLY WITH THE MONTGOMERY COUNTY CHILD SUPPORT AGENCY IN SETS NUMBER 7041157889."

**{¶ 20}** Defendant's third assignment of error:

"THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING AS COMMUNITY CONTROL SANCTIONS ORDERS THAT APPELLANT ABSTAIN FROM THE USE OF ALCOHOL AND COMPLY WITH MONTGOMERY COUNTY CHILD SUPPORT AGENCY SETS NUMBER 7041157889."

**{¶ 21}** When ordering community control sanctions, R.C. 2929.15 grants a sentencing court broad discretion to impose residential, nonresidential, and financial sanctions, as well as other conditions the court deems appropriate. *State v. Talty,* 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. Therefore, we review a trial court's imposition of conditions upon a defendant's community control sanctions under an abuse-of-discretion standard. *Id.*

**{¶ 22}** An "[a]buse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. V. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 167, 553 N.E.2d 597 (1990).

**{¶ 23}** A trial court may impose conditions upon a defendant's community control sanctions "that relate to the interest of doing justice, rehabilitate the offender, and insure his good behavior." *State v. Teegarden,* 2d Dist. Montgomery No. 24960, 2012-Ohio-3488, ¶ 12, quoting *State v. Hubbell,* 2d Dist. Darke No. 1617, 2004-Ohio-398, in turn citing *State v. Jones,* 49 Ohio St.3d 51, 52, 550 N.E.2d 469 (1990); *State v. Craft,* 2d Dist. Greene No. 2001-CA-128, 2002-Ohio-5127 (applying *Jones*

and noting that "we see no meaningful distinction between conditions of probation and conditions in community control sanctions").

**{¶ 24}** Defendant argues that the trial court erred in imposing as one of his community control conditions an order that he pay his previously-ordered child support obligation. Specifically, he argues that such a sanction is not authorized by law, amounts to an unlawful delegation of sentencing authority, and violates the separation of powers. We have repeatedly rejected these arguments. *Teegarden; State v. Shufford,* 2d Dist. Montgomery Nos. 24846 and 24847, 2012-Ohio-3503; *State v. Henderson,* 2d Dist. Montgomery No. 24849, 2012-Ohio-3499.

**{¶ 25}** When the court imposes non-residential community control sanctions, "the court shall impose as a condition of the non-residential sanctions that, during the period of the sanctions, the offender must abide by the law * * *." R.C. 2929.15(A)(1). Defendant's pre-sentence investigation report states that he was convicted of non-support of dependents in case No. 10CR3468. The court's judgment of conviction in the present case requires Defendant to comply with the support requirements imposed in that prior case and also "with the Montgomery County Support Enforcement Agency in SETS #7041157889."

**{¶ 26}** The sanction the court imposed concerning Defendant's support obligation does not expressly condition his community control on his payment of support. Rather, his community control is conditioned on compliance with a court order requiring him to pay that support. The court in the present case was authorized to impose that requirement because it merely requires Defendant to "abide by the law" which the prior support order represents. R.C. 2929.15(A)(1).

**{¶ 27}** Defendant also insists that the trial court erred in ordering him to abstain from alcohol while serving his community control sanctions. Pursuant to R.C. 2929.17(H) a trial court may impose "[a] term of drug and alcohol use monitoring, including random drug testing." Defendant's pre-sentence investigation report states that Defendant said that when he drinks, he drinks "one bottle

of alcohol," and indicates that in early 2011, Defendant completed an alcohol abuse treatment program. Since he had recently been treated for alcohol abuse, it was not unreasonable for the trial court to order that Defendant abstain from the use of alcohol as one of the conditions of his community control sanctions.

**{¶ 28}** Defendant's second and third assignments of error are overruled.

**{¶ 29}** Having sustained the first assignment of error, we will reverse Defendant's conviction and remand for further proceedings consistent with our opinion.

Fain, J., concurs.

Froelich, J., concurring:

**{¶ 30}** I write separately only to emphasize the fact-specific nature of our holding. On direct examination, the officer was asked, "And did you have any intention of detaining him beyond the encounter and the conversation you just told the court about?" The referenced conversation was about the knock-and announce and obtaining consent, and the officer answered in the negative. This, together with the totality of the circumstances, make me conclude that to a reasonable person, the Appellant was detained at the time of the consent.

**{¶ 31}** Therefore, without some reasonable articulable suspicion of criminal activity, the continued detention was unlawful. *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist. 1994). Any consent to search obtained during an unlawful detention is tainted and may be invalid. *Id.*; *see also State v. Ferrante*, 2d Dist. Montgomery No. 24344, 2011-Ohio-4870, ¶ 29-32. However, the taint of the detention can "be purged when the suspect's subsequent consent is the 'product of an intervening act of free will.'" (Citations omitted.) *United States v. Beauchamp*, 659 F.3d 560, 573 (6th Cir.2011).

**{¶ 32} It was the State's burden to prove that the consent was "unequivocal, specific, and intelligently given." *United States v. Moon*, 513 F.3d 527, 537 (6th Cir.2008).**

**{¶ 33}** The subjective non-detaining purpose and lack of flagrancy of the officers' actions do not dissipate the taint; and there **were no intervening circumstances between the detention and the consent.**

**Copies mailed to:**

**Michele D. Phipps, Esq.**
**Victor A. Hodge, Esq.**
**Hon. Michael L. Tucker**