[Cite as *State v. Fields*, 2019-Ohio-2834.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-35 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-109 |
| | : | |
| JESSE G. FIELDS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of July, 2019.

. . . . . . . . . .

KEVIN TALEBI, Atty. Reg. No. 0069198, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

MICHAEL R. PENTECOST, Atty. Reg. No. 0036803, 117 South Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Jesse G. Fields, appeals from his conviction and sentence in the Champaign County Court of Common Pleas after he pled guilty to one count of aggravated possession of drugs. On February 26, 2019, Fields's appointed appellate counsel filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting the absence of any non-frivolous issues for appeal. On March 6, 2019, this court notified Fields that his counsel found no meritorious claims to present on appeal and granted Fields 60 days to file a pro se brief assigning any errors. After Fields failed to file a pro se brief, we conducted an independent review of the record as required by *Anders.* Upon reviewing the record, we find no issues with arguable merit for appeal. Accordingly, the judgment of the trial court will be affirmed.

### Facts and Course of Proceedings

{¶ 2} On June 4, 2018, the Champaign County Grand Jury returned an indictment charging Fields with one count of theft of drugs in violation of R.C. 2913.02(A)(1), (B)(6), and one count of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(a). The charges arose after Fields's employer, Brandy Jackson, reported to police that Fields had stolen and ingested a capsule of lawfully prescribed Adderall that belonged to her son.

{¶ 3} Pursuant to a plea agreement, Fields entered a guilty plea to aggravated possession of drugs, a felony of the fifth degree. In exchange for his guilty plea, the State agreed to dismiss the charge for theft of drugs and to have a presentence investigation ("PSI") conducted prior to sentencing. The State also agreed to

recommend that Fields be sentenced to community control sanctions. The State's recommendation for community control was conditioned on the PSI not revealing any undisclosed criminal convictions and on Fields not violating his bond or engaging in any further criminal activity. Fields also agreed to not pursue intervention in lieu of conviction under R.C. 2951.041.

{¶ 4} After conducting a plea colloquy in compliance with Crim.R. 11, the trial court accepted Fields's guilty plea. The trial court then ordered a PSI report and scheduled the matter for sentencing. The PSI report indicated that, for the past seven years, Fields served as a caretaker for Jackson and her children. In exchange for Fields's services, Jackson and her husband provided Fields with shelter at their residence. Fields told the PSI examiner that Jackson and her husband supported him financially and that he paid no bills.

{¶ 5} The PSI also indicated that Jackson attended the PSI interview with Fields. Although Fields indicated that he could read and write, the PSI examiner reported that Jackson indicated she filled out the PSI questionnaire for Fields with Fields's assistance. The PSI examiner also noted that, during the interview, Fields would often look to Jackson for answers to the examiner's questions and that Jackson would often correct Fields's statements.

{¶ 6} The PSI report further indicated that Fields admitted to stealing and ingesting an Adderall pill that was legally prescribed to Jackson's son. However, on the day Jackson reported the incident to police, Fields told the investigating officer that Jackson had given him one of her son's Adderall pills six months earlier to help him stay awake and focused. Fields, however, admitted that he did not have permission to take the pill

in question.  Other than the Adderall pills, Fields told the PSI examiner that he has not used drugs since 2009 and that he does not need treatment for substance abuse.

{¶ 7} As for his criminal history, the PSI revealed that Fields had no prior felony record.  Fields's record only consisted of a first-degree-misdemeanor conviction for receiving stolen property in 2010.  Fields also self-reported a 2006 domestic violence conviction in Las Vegas, Nevada, which the PSI examiner could not confirm.  Due primarily to his limited criminal history, Fields was considered to be a low risk for reoffending under the Ohio Department of Rehabilitation and Correction's Community Supervision Risk Assessment System.

{¶ 8} Prior to sentencing Fields, the trial court considered the PSI report, the principles and purposes of sentencing in R.C. 2929.11, the seriousness and recidivism factors in R.C. 2929.12, Fields's sentencing memorandum, and the oral statements given by both parties.  During the parties' statements, both the prosecutor and Fields's defense counsel agreed that Jackson was a negative influence on Fields and should not be involved in his life.  In addition to recommending that Fields have no contact with Jackson, defense counsel recommended that Fields be ordered to obtain gainful employment and to complete the "Thinking for a Change" program.

{¶ 9} Pursuant to R.C. 2929.13(B)(1)(a), the trial court found that community control sanctions were mandatory for Fields's offense.  The trial court therefore ordered Fields to serve one year of community control sanctions that included both standard and special conditions.  As part of the special conditions, the trial court ordered Fields to have no contact with Jackson or her son.  In order to give Fields time to find employment and a new place to live, the trial court indicated that the no contact order would not take effect

until October 15, 2018, which was four weeks from the date of sentencing.   Other special conditions of Fields's community control included completing the "Thinking for a Change" program, attending substance abuse counseling, complying with random drug screens, obtaining employment, and paying court costs.

{¶ 10} Fields thereafter appealed from his conviction and sentence.

## Law and Analysis

{¶ 11} As previously noted, Fields's appellate counsel filed a brief pursuant to *Anders*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493.   According to *Anders*, this court must conduct an independent review of the record to determine if the appeal at issue is wholly frivolous.   *Id.* at 744.   "*Anders* equates a frivolous appeal with one that presents issues lacking in arguable merit.   An issue does not lack arguable merit merely because the prosecution can be expected to present a strong argument in reply, or because it is uncertain whether a defendant will ultimately prevail on that issue on appeal."   *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8.   Rather, "[a]n issue lacks arguable merit if, on the facts and law involved, no responsible contention can be made that it offers a basis for reversal."   *Id.*, citing *State v. Pullen,* 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4.

{¶ 12} If we determine the appeal is frivolous, we may grant counsel's request to withdraw and then dismiss the appeal without violating any constitutional requirements, or we can proceed to a decision on the merits if state law requires it.   *State v. McDaniel*, 2d Dist. Champaign No. 2010 CA 13, 2011-Ohio-2186, ¶ 5, citing *Anders* at 744.   However, "[i]f we find that any issue presented or which an independent analysis reveals

is not wholly frivolous, we must appoint different appellate counsel to represent the defendant." *Marbury* at ¶ 7, citing *Pullen* at ¶ 2.

{¶ 13} In this case, Fields's appellate counsel has raised one potential assignment of error for this court's review. Under the potential assignment of error, counsel suggests that the trial court may have abused its discretion by imposing a burdensome special condition of community control. In so arguing, counsel specifically points to the special condition requiring Fields to have no contact with Jackson, as that condition left Fields without a home. Counsel submits that it is arguable that a community control sanction that essentially requires a defendant to become homeless is unduly burdensome and an abuse of discretion. Under the circumstances of this case, we find no arguable merit to this claim.

{¶ 14} "When ordering community control sanctions, R.C. 2929.15 grants a sentencing court broad discretion to impose residential, nonresidential, and financial sanctions, *as well as other conditions the court deems appropriate.*" (Emphasis added.) *State v. Rogers*, 2d Dist. Montgomery No. 24848, 2012-Ohio-4753, ¶ 21, citing *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. "Therefore, we review a trial court's imposition of conditions upon a defendant's community control sanctions under an abuse-of-discretion standard." *Id.*

{¶ 15} " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Most abuses of discretion "result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* Decisions are

unreasonable when they are not supported by a sound reasoning process. *Id.*

{¶ 16} "[T]he tests for reasonableness of a [community control] sanction are those announced in [*State v. Jones*, 49 Ohio St.3d 51, 550 N.E.2d 469 (1990)] regarding reasonableness of a condition of probation." *State v. Lacey*, 2d Dist. Montgomery No. 23261, 2009-Ohio-6267, ¶ 12, citing *Talty*. In *Jones*, the Supreme Court of Ohio held that a trial court may impose conditions upon a defendant's probation that relate to the interests of doing justice, rehabilitating the offender, and insuring his good behavior. *Jones* at 52, citing former R.C. 2951.02(C). In making this determination, "courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." (Citations omitted.) *Id.* at 53.

{¶ 17} When considering the factors in *Jones*, it cannot be said that the trial court's order for Fields to have no contact with Jackson or her son was unreasonable. As to the first factor, the no contact order was reasonably related to rehabilitating Fields because the record indicates that Jackson was a negative influence on him. This is demonstrated by the fact that Jackson had previously given Fields one of her son's Adderall pills to help him stay awake and focused. In addition, the bartering arrangement between Jackson and Fields had allowed 48-year-old Fields to go without having gainful employment for seven years. The record indicates that Fields was previously employed as a truck driver, but he decided to quit driving because "he just got tired of it" and "wanted to take a break." Sentencing Trans. (Sept. 17, 2018), p. 9. Despite being healthy and capable of working, Fields had since lived on food stamps and had not paid taxes since 2004. His

arrangement with Jackson had permitted him to continue this trend. Jackson's participation in the PSI process also demonstrated that Jackson exerted an odd amount of control over Fields's life. For these reasons, it would be reasonable to conclude that Jackson's influence over Fields could diminish the prospect of Fields remaining drug free and obtaining gainful employment.

**{¶ 18}** With regard to the second factor in *Jones*, we find that the no contact order bore some relationship to the crime since Jackson had previously given Fields an Adderall pill. Similarly, for the third factor, the no contact order was reasonably related to preventing possible future criminality since it prevented Fields from procuring any more Adderall from Jackson or her son.

**{¶ 19}** We further note that the trial court imposed the no contact order after both the prosecutor and Fields's defense counsel expressed their belief that the no contact order was in Fields's best interest. Although the no contact order required Fields to find a new place to live, the order did not go in effect until four weeks after sentencing, which provided Fields with time to find a new residence. When the trial court asked Fields if he believed four weeks was "fair," Fields responded: "Yes, Your Honor." Sentencing Trans. (Sept. 17, 2018), p. 16.

**{¶ 20}** For the foregoing reasons, we find that appellate counsel's potential assignment of error lacks arguable merit. The special condition of community control requiring Fields to have no contact with Jackson or her son was reasonable and not an abuse of discretion. Therefore, no responsible contention can be made that the no contact order offers a basis for reversal.

**{¶ 21}** After conducting an independent review of the record as required by

*Anders,* we find that, based on the facts and relevant law involved, there are no issues with arguable merit to present on appeal.   Accordingly, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Kevin Talebi
Michael R. Pentecost
Jesse G. Fields
Hon. Nick A. Selvaggio